# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON  DIVISION

| | | |
|---|---|---|
| **ARTHUR McKENZIE**<br>Plaintiff | §<br>§<br>§<br>§ | |
| | § | **CIVIL ACTION NO** |
| **V.** | §<br>§ | **4:08-cv-002286** |
| | § | |
| **PETROLEUM SERVICES**<br>**CORPORATION**<br>Defendant | §<br>§<br>§<br>§ | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND MEMORANDUM IN SUPPORT

**PHELPS DUNBAR LLP**

Maureen Blackburn Jennings
Attorney In Charge
Texas Bar No.: 02385280
Federal ID No.: 09523
maureen.jennings@phelps.com
Andrew A. Woellner
Texas Bar No.: 24060850
Federal ID No.: 876537
andrew.woellner@phelps.com
700 Louisiana Street, Suite 2600
Houston, Texas 77002
Telephone: (713) 626-1386
Telecopier: (713) 626-1388

and

Thomas H. Kiggans
Texas Bar No.: 11393450
Federal ID No.: 116
tom.kiggans@phelps.com
445 North Blvd., Suite 701
Baton Rouge, Louisiana   70802
Telephone:  (225) 346-0285
Telecopier:  (225) 381-9197

**ATTORNEYS FOR DEFENDANT**
**SGS NORTH AMERICA INC.**

**OF COUNSEL:**
**PHELPS DUNBAR LLP**

# <u>TABLE OF CONTENTS</u>

Table of Contents ..................................................................................................... i

Table of Authorities ................................................................................................ ii

Defendant's Motion for Summary Judgment and Memorandum in Support ................................. 1

I.      Nature and Stage of the Proceedings ............................................................... 1

II.     Issues Presented ............................................................................................ 2

III.    Undisputed Material Facts ............................................................................. 2

IV.    Summary Judgment Evidence ........................................................................ 7

V.     Summary Judgment Standard ........................................................................ 7

VI.    Summary of Argument ................................................................................... 8

VII.   Defendant is Entitled to Summary Judgment on Each of Plaintiff's Claims .................... 10

       A.     Plaintiff's § 1981 Claim - Discharge. .................................................. 10

            1.     Plaintiff Cannot Prove The Fourth Element of his Prima Facie Case. ...... 10

            2.     Plaintiff Cannot Prove Pretext. ....................................................... 10

       B.     Plaintiff's Title VII and § 1981 Claims - LG Endorsement ............................ 11

            1.     Plaintiff's LG Endorsement Claims are Time-Barred. ....................... 12

            2.     Even if Plaintiff's LG Endorsement Claims are Timely, They are
Insupportable as a Matter of Law. ................................................ 14

       C.     Plaintiff's Hostile Environment Claims Under Title VII and § 1981 .................. 15

       D.     Plaintiff's Breach of Contract Claim. .................................................. 17

VIII.  Conclusion ................................................................................................... 20

Certificate of Service ............................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**

*Bauer v. Albemarle Corp.,*
169 F.3d 962 (5th Cir. 1999) ......................................................................... 11

*Byers v. Dallas Morning News,*
209 F.3d 419 (5th Cir. 2000) ......................................................................... 13

*Celestine v. Petroleos de Venezuela SA,*
266 F.3d 343 (5th Cir. 2001) ......................................................................... 16

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986).......................................................................................... 7

*Davis v. Dallas Area Rapid Transit,*
383 F.3d 309 (5th Cir. 2004) ......................................................................... 11

*EEOC v. La. Office of Comty. Servs.,*
47 F.3d 1438 (5th Cir. 1995) ......................................................................... 11

*Faragher v. City of Boca Raton,*
524 U.S. 775 (1998) ........................................................................................ 16

*Foley v. Univ. of Houston Sys.,*
355 F.3d 333 (5th Cir. 2003) ................................................................... 12, 13

*Frank v. Xerox Corp.,*
347 F.3d 130 (5th Cir. 2003) ......................................................................... 12

*Harris v. Forklift Sys., Inc.,*
510 U.S. 17 (1993)........................................................................................... 16

*Jones v. R.R. Donnelley & Sons Co.,*
541 U.S. 369 (2004)......................................................................................... 13

*Jones v. Robinson Prop. Group, L.P.,*
427 F.3d 987 (5th Cir. 2005) ......................................................................... 6, 7

*Lawrence v. Univ. of Texas Medical Branch at Galveston,*
163 F.3d 309 (5th Cir. 1999) ........................................................................... 7

*Long v. Eastfield Coll.,*
88 F.3d 300 (5th Cir. 1996) ........................................................................... 16

*McClain v. Lufkin Indus., Inc.,*
519 F.3d 264 (5th Cir. 2008),
*cert. denied* 129 S.Ct. 198 (2008) ................................................................ 15

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)................................................................................................. 7

*Mitchell v. Crescent River Port Pilots Ass'n*,
    265 Fed.Appx. 363 (5th Cir. 2008)................................................................. 13, 14

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002)............................................................................................. 14

*Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*,
    245 F.3d 507 (5th Cir. 2001) .......................................................................... 10, 14

*Patterson v. McLean Credit Union*,
    491 U.S. 164, 109 S.Ct. 2363 (1989),
    *superseded by statute on other grounds as stated in*
    *CBOCS West, Inc. v. Humphries*,
    128 S.Ct. 1951 (2008).......................................................................................... 12

*Pegram v. Honeywell, Inc.*,
    361 F.3d 272 (5th Cir 2004) .......................................................................... 13, 14

*Scales v. Slater*,
    181 F.3d 703 (5th Cir. 1979).................................................................................. 8

*St. Mary's Honor Center v. Hicks*,
    509 U.S. 502 (1993)......................................................................................... 8, 15

*Walker v. Thompson*,
    214 F.3d 615 (5th Cir. 2000),
    *abrogated on other grounds by Burlington Northern and Santa Fe*
    *Ry. Co. v. White*, 548 U.S. 53 (2006).................................................................. 10

**Statutes**

28 U.S.C. § 1658(a) ................................................................................................... 13

42 U.S.C. § 1981 .................................................................................................... 1, 13

42 U.S.C. 2000, *et seq.*................................................................................................. 1

46 C.F.R. § 13.109(a).................................................................................................... 3

46 C.F.R. § 13.107(b).................................................................................................... 3

46 C.F.R. Part 13....................................................................................................... 2, 3

**Rules**

FED.R.CIV.P. 56 ............................................................................................................. 7

PD.1239728.1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON  DIVISION

| | | |
|---|---|---|
| **ARTHUR McKENZIE** | § | |
| **Plaintiff** | § | |
| | § | |
| | § | **CIVIL ACTION NO** |
| | § | |
| **V.** | § | **4:08-cv-002286** |
| | § | |
| **PETROLEUM SERVICES** | § | |
| **CORPORATION** | § | |
| **Defendant** | § | |


## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND MEMORANDUM IN SUPPORT

SGS North America Inc., named defendant herein as Petroleum Services Corporation,[1]
files this motion for summary judgment and memorandum in support pursuant to Rule 56,
Fed.R.Civ.P.  The summary judgment evidence establishes that there is no genuine issue of
material fact and Defendant is entitled to judgment as a matter of law on all of Plaintiff's claims.

## I.  NATURE AND STAGE OF THE PROCEEDINGS

Arthur McKenzie filed this damages suit against his former employer on July 22, 2008,
raising race discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C.
2000, *et seq.* ("Title VII") and under 42 U.S.C. § 1981 ("§ 1981"), as well as  breach of contract
claims under Texas law.  *See* Original Complaint, Ex. 3, rec.doc. 1. Defendant filed its Answer
and Affirmative Defenses on August 20, 2008.  rec.doc. 5.  Following their Rule 26 Conference,
the parties filed the Joint Discovery Case Management Plan on November 13, 2008.  rec.doc. 12.
The Court's Scheduling Order set the motions deadline on September 1, 2009 and Docket Call
on December 18, 2009, with trial to be held in January 2010.  rec.doc. 13.

---

[1]  In 2004, SGS North America Inc. acquired Petroleum Service Corporation ("PSC").  PSC is the entity that
employed Arthur McKenzie and operates the Tankerman Career Academy.

## II.  ISSUES PRESENTED

1.   Is Defendant entitled to summary judgment on plaintiff's discharge claim under § 1981?

2.   Is Defendant entitled to summary judgment on Plaintiff's Title VII claim for failure to provide the transfers required for the LG endorsement?

3.   Is Defendant entitled to summary judgment on Plaintiff's § 1981 claim for failure to provide the transfers required for the LG endorsement?

4.   Is Defendant entitled to summary judgment on Plaintiff's hostile environment claim under Title VII?

5.   Is Defendant entitled to summary judgment on Plaintiff's hostile environment claim under § 1981?

6.   Is Defendant entitled to summary judgment on Plaintiff's breach of contract claim under Texas law?

## III.  UNDISPUTED MATERIAL FACTS

PSC provides a variety of marine and in-plant services throughout the U.S. inland waterway system and along the Gulf Coast, including loading and unloading barges with material for the refining, chemical, and marine transportation industries.  *See* Declaration of Marsha Ramsey, Ex. 2, ¶ 7.  PSC employs tankermen who conduct barge loading and unloading jobs.  Each tankerman serves as the person-in-charge of these critical operations, with responsibility for protecting the environment by ensuring the safe transfer of petrochemicals to and from barges.  Ex. 2, ¶ 7.

For safety and environmental reasons, the U.S. Coast Guard regulates the training and certification of tankermen.  Coast Guard regulations impose specific and detailed training requirements on individuals who aspire to the tankerman position.  Each of these requirements must be satisfied in full before the Coast Guard will certify these persons as tankermen authorized to load and unload vessels that transport certain cargo on the navigable water of the United States.  Ex. 2, ¶ 8; *see* 46 CFR Part 13 (Ex. 11).  The Coast Guard issues several

tankerman credentials, including the "Tankerman-PIC (Barge)," which allows the holder to "act as a PIC [person in charge] of a transfer of liquid cargo in bulk only on a tank barge." 46 CFR § 13.107(b), Ex. 11, p. 232. The Tankerman-PIC (Barge) endorsements also contains one or both of the following endorsements: the dangerous liquid (DL) endorsement and the liquefied gas (LG) endorsement. Ex. 2, ¶ 9; 46 CFR § 13.109(a).

In 2003, PSC launched its Tankerman Career Academy with the goal of providing Coast Guard-certified training that enables graduates to pursue careers as tankermen. Ex. 2, ¶ 10. The curriculum includes about four months of both classroom and one-on-one field instruction. Ex. 2, ¶ 10. Since 1998, PSC's training program (which was the predecessor to the TCA) has been approved by the Coast Guard as meeting the requirements of 46 CFR Part 13. Ex. 2, ¶ 10. The TCA provides the approved classroom work required by the Coast Guard for obtaining both the DL endorsement and the LG endorsement. Ex. 2, ¶ 10. In addition to requiring a certain number of classroom training hours pertaining to liquefied gas (LG) transfers, Coast Guard regulations also require ten actual transfers of liquefied gas (five discharges and five loadings) in order to issue an LG endorsement to an individual who does not already have the Tankerman-PIC (Barge) Dangerous Liquid (DL) endorsement.[2] Ex. 2, ¶ 11. In the case of an individual who already has the Tankerman-PIC (Barge) Dangerous Liquid (DL) endorsement, the Coast Guard receives six actual transfers of liquefied gas (three discharges and three loadings) in order to issue an LG endorsement. Ex. 2, ¶ 11. PSC's volume of work involving transfers of liquefied gas depends entirely on circumstances beyond its control, primarily the needs of the company's customers. As a result, PSC cannot and does not guarantee that a TCA student will obtain the LG endorsement upon graduation. Importantly, the Coast Guard does not require that an

---

[2] One of Plaintiff's main complaints in this lawsuit is that, on graduation from the TCA, he received the Tankerman-PIC (Barge) endorsement with the DL endorsement, but did not receive the LG endorsement.

individual have the LG endorsement in order to obtain certification and work as a tankerman.[3]

On completion of the TCA, a graduate may apply for and receive from the Coast Guard a Merchant Mariner's Document ("MMD") with a Tankerman-PIC (Barge) Dangerous Liquid (DL) Endorsement. This enables a graduate to begin working as a tankerman (person in charge) and conduct transfers of dangerous liquids. Ex. 2, ¶ 12.

Plaintiff enrolled in the TCA on November 15, 2004. Ex. 2, ¶ 13. On that date, he and a TCA representative both signed the TCA Enrollment Agreement, which provided that Plaintiff's "enrollment in the Program is governed by the terms and conditions of this Agreement." *See* deposition of Arthur McKenzie, Ex. 1, 90:6-15; Ex. 2, ¶ 13; *see also* TCA Enrollment Agreement, Ex. 4.[4] The Enrollment Agreement also specifically incorporated by reference the TCA Catalog. *See* Ex. 5. McKenzie received a copy of the TCA Catalog. Ex. 1, 91:16-92:10; Ex. 2, ¶ 13. On November 29, 2004, PSC hired Plaintiff, as is customary with new TCA students, and paid him while he worked as a student-trainee. Ex. 2, ¶ 13. Over the next four months, McKenzie successfully completed the Academy's classroom and field training requirements. In March 2005, he graduated from the TCA and obtained his MMD from the Coast Guard with the endorsement of Tankerman-PIC (Barge) DL. Ex. 2, ¶ 13; *see also* Plaintiff's U.S. Merchant Mariner's Document, Ex. 6; and Certificate of Completion, Ex. 7. The TCA also issued Plaintiff a certificate attesting that he had successfully completed the classroom portion of the requirements for obtaining the DL and LG endorsements. *See* Certificate of Training, Ex. 8; Ex. 2, ¶ 13.

The March 2005 graduation class included McKenzie and seven other tankermen. Ex. 2*,*

---

[3]   As discussed later in detail, a Tankerman-PIC (Barge) can earn a good living with the DL endorsement only. But the reverse is not true, due to the fact that the vast majority of available barge transfer work in the industry involves dangerous liquids (DLs), not liquefied gases (LGs).

[4]    The Enrollment Agreement that McKenzie signed is titled "Tankerman Training School Enrollment Agreement." The TCA was at one point known as the Tankerman Training School.

¶ 14. Four of these eight graduates had completed the transfers required to qualify for and obtain the LG endorsement. Of the four March 2005 graduates who obtained the LG endorsement, one (Archie Knighton) is African-American, one is Hispanic, and two are Caucasian. Ex. 2, ¶ 14.[5] At no time did PSC assign any employees or student-trainees to any particular task, including LG transfers, on the basis of race. Ex. 2, ¶ 17.

After graduation, Plaintiff started working full-time for PSC as a tankerman. Ex. 2, ¶ 15. Shortly after that, Mason de la Cruz, Plaintiff's supervisor, suspended him for three days for failing to maintain a properly working fire extinguisher. Ex. 1, 66:14 – 67:10; Ex. 2, ¶ 15. Plaintiff admitted that each tankerman is responsible for ensuring that his or her fire extinguisher works properly; that his was not working properly when he was suspended, Ex. 1, 67:15-22; and that it is important for a tankerman to have a working fire extinguisher. Ex. 1, 68:13-15. Nevertheless, Plaintiff felt that he should not have been suspended for failing to keep his extinguisher charged. Ex. 1, 68:16-19. Notably, when asked in his deposition whether he knew of anyone who didn't receive disciplinary action after taking unserviced equipment to a job site, Plaintiff could not provide an example. Ex. 1, 69:22-70:1.

PSC discharged Plaintiff on February 26, 2007, after he overdrafted a barge and intentionally misrepresented his draft marks in an effort to cover up his error. Ex. 1, 130:23-131:3; Ex. 2, ¶ 16; *see also* Termination Record, Ex. 9. While working shoreside in Texas City, Plaintiff was loading styrene, a chemical he described as a "dangerous liquid," onto a barge owned by one of PSC's customers. Ex. 9; Ex. 1, 134:5-20.[6] Although Plaintiff had been

---

[5] Plaintiff testified in his July 22, 2009 deposition that he had recently learned that Archie Knighton, an African-American member of his graduating class, had received his LG endorsement. Ex. 1, 40:4-20; 41:24-42:2.

[6] A barge generally contains four separate compartments for carrying cargo – the port bow; starboard bow, port stern, and starboard stern. The tankermen are responsible for loading each compartment to the levels ("drafts") requested by PSC's customers. Otherwise, the barges will tilt while transporting the product and could run aground in shallow water or, under the worst-case scenario, sink.

instructed to draft the barge to 9 feet at each corner and he knew that "it's very important that it's loaded to draft," he overloaded the barge. Ex. 1, 135:11-22; 133:22-23. McKenzie then reported to PSC's dispatcher that he had drafted the bow and starboard stern to 9-feet, and the port stern to 9-feet-6-inches. Ex. 1, 135:3-10. When he made the report, Plaintiff knew he had overloaded the barge by more than the six inches he reported to the dispatcher: "I know one of them was a 9-6. There was a – then another corner was a 10-0…I knew that, but I didn't report it accurately. I understand that." Ex. 1, 144:10-14. He frankly admitted in his deposition that his motivation for lying was his desire to avoid being discharged for his overdrafting error. Ex. 1, 131:25 – 132:7. Based on his dishonesty, PSC terminated Plaintiff for violating the company's Integrity and Ethics policy. Ex. 2, ¶ 16; Ex. 9.

Plaintiff filed an EEOC charge of discrimination on September 7, 2007, alleging only one claim: that PSC denied him the LG endorsement in violation of Title VII and the Texas Commission on Human Rights Act ("TCHRA"). *See* Plaintiff's EEOC Charge of Discrimination, Ex. 10 (also attached as Exhibit 2 to Original Complaint).[7] McKenzie filed suit on July 22, 2008, more than two years after his graduation and more than two years after his discharge. Despite the fact that he included in his EEOC charge only federal and state law claims for denial of the LG endorsement, plaintiff raised for the first time in this lawsuit two additional Title VII claims – race-based discharge and a hostile work environment.[8]

### Plaintiff's Pleadings

Construed liberally, McKenzie's Original Complaint sets out the following claims: (1)

---

[7] In his EEOC charge, Plaintiff stated that he graduated from the TCA and became an employee of PSC in "March 2006." In his deposition, Plaintiff clarified that he graduated and began full-time employment with PSC in March *2005*. Ex. 1, 165: 1-16.

[8] Plaintiff included in his EEOC charge a state law claim under the TCHRA for denial of the LG endorsement, but did not include that claim in this lawsuit. Plaintiff also included § 1981 claims in this lawsuit, but that statute does not require exhaustion of any administrative remedies. *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005). Therefore, Plaintiff was not required to include his § 1981 claims in his EEOC filing.

discharge claim under § 1981; (2) Title VII claim for failure to provide the transfers required for

the LG endorsement; (3) § 1981 claim for failure to provide the transfers required for the LG

endorsement; (4) hostile environment claim under Title VII; (5) hostile environment claim under

§ 1983; and (6) state law breach of contract claim.

## IV.     SUMMARY JUDGMENT EVIDENCE

Defendant attaches the following evidence in support of this motion:

1. Excerpts of deposition of Arthur McKenzie, Jr.
2. Declaration of Marsha Ramsey
3. Plaintiff's Original Complaint
4. TCA Enrollment Agreement
5. TCA Catalog
6. Plaintiff's Merchant Mariner's Document
7. Certificate of Completion
8. Certificate of Training
9. Termination  Record
10. Plaintiff's EEOC Charge of Discrimination
11. 46 CFR Part 13
12. Archie Knighton's Merchant Mariner's Document
13. Copy of *Mitchell v. Crescent River Port Pilots Ass'n,* 265 Fed.Appx. 363, 2008 WL 410414 (5th Cir. 2008)

## V.     SUMMARY JUDGMENT STANDARD

The Supreme Court has interpreted Rule 56, FED.R.CIV.P., to *mandate* entry of summary

judgment against a party who is unable, after adequate time for discovery, to establish any one

essential element of his claim and on which he would bear the burden of proof at trial.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In cases alleging discrimination under Title VII or

§ 1981, plaintiff bears the ultimate burden of proving that the employer's actions were motivated

by intentional discrimination. Under the three-tiered model of proof established in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973),[9]  plaintiff must initially establish a *prima facie*

---

[9]     Although *McDonnell Douglas* involved a claim of race discrimination under Title VII, the Fifth Circuit applies the same analysis to § 1981 claims.  *Lawrence v. Univ. of Texas Medical Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999); *Jones*, 427 F.3d at 992.

case by proving facts sufficient to raise an inference of discrimination. If the employer articulates a nondiscriminatory reason for its conduct, the plaintiff, in order to prevail, must come forward with substantial evidence of pretext and prove that race was a determining factor in the employment decision. *See Scales v. Slater*, 181 F.3d 703, 709 (5th Cir. 1979). The Supreme Court clarified the *McDonnell Douglas* model of proof in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). Under *Hicks,* the only burden that shifts to the defendant after plaintiff makes a *prima facie* case is one of "producing evidence" that an adverse employment action was taken for a legitimate, nondiscriminatory reason. The Court emphasized that the burden of proving intentional discrimination remains at all times with the plaintiff. *Id.*

## VI.   SUMMARY OF ARGUMENT

**Plaintiff's Discharge Claim.**  Plaintiff cannot prove an essential element of his *prima facie* case on his termination claim – that similarly situated non-African-American tankermen engaged in the same conduct and were not discharged.  Alternatively, if Plaintiff establishes his *prima facie* case, he cannot meet his burden of proving pretext, *i.e.*, he cannot prove that PSC discharged him on the basis of his race.  The undisputed material facts establish that PSC discharged McKenzie for a legitimate, non-discriminatory reason – lying to his employer about the fact that he had overdrafted a barge, which created both safety and environmental risks.  Thus, Plaintiff cannot prove pretext because he admitted that he overdrafted the barge and that he lied to his superiors in an attempt to avoid detection.

**Plaintiff's Claims Related to the LG Endorsement.**  For any one of three separate reasons**,** Plaintiff cannot meet his burden of proving that PSC denied him on the basis of his race the required training for the LG endorsement.  First, his claims under both Title VII and under § 1981 are time-barred.  Plaintiff's LG endorsement claims under both statutes accrued in March 2005, when he graduated from the TCA and received his MMD with some endorsements, but not

the LG endorsement. At the time of his March 2005 graduation, Plaintiff had only 300 days (or until January 2006) in which to file an EEOC Charge of Discrimination based on his LG endorsement claim. Despite this deadline, Plaintiff did not file with the EEOC until September 2007, more than *two years* after his graduation from the TCA. Plaintiff's LG endorsement claim under § 1981 is subject to Texas' two-year statute of limitations, which expired in March 2007. Plaintiff first raised that claim in this lawsuit filed July 22, 2008. Thus, Plaintiff's Title VII and § 1981 claims are both untimely.

Second, Plaintiff cannot prove an essential element of his *prima facie* case – that PSC treated non-African-American tankermen more favorably, *i.e.*, that they received the training required for the LG endorsement.

Alternatively, Plaintiff cannot prevail on either his Title VII or § 1981 claims related to the LG endorsement. PSC did not provide Plaintiff with the required number of LG transfers because the company did not have enough LG work to enable all tankermen to receive the transfers required by the Coast Guard for the endorsement. This is a legitimate, non-discriminatory reason, and Plaintiff has no competent summary judgment evidence that would support a finding of pretext.

**Plaintiff's Breach of Contract Claim.** In Plaintiff's enrollment contract, PSC promised that, on successful completion of the TCA course, Plaintiff would receive an MMD which would enable him to work as a tankerman in the industry. Plaintiff received his MMD, and has enjoyed a successful career as a tankerman. PSC never promised Plaintiff that it would provide him, as part of his TCA enrollment contract, all of the received transfers for the LG endorsement.

The Court should grant Defendant summary judgment on each of Plaintiff's claims.

**VII.    DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON EACH OF PLAINTIFF'S CLAIMS.**

**A.    Plaintiff's § 1981 Claim - Discharge.[10]**

**1.    Plaintiff Cannot Prove The Fourth Element of his Prima Facie Case.**

To survive a motion for summary judgment, Plaintiff must establish a *prima facie* case of intentional discrimination by showing that: (1) he belongs to a protected group; (2) he was qualified for his position; (3) he suffered an adverse employment action; and, in the case of disparate treatment, (4) that similarly situated employees were treated more favorably. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001). For purposes of McKenzie's discharge claim, PSC concedes the first three elements of his *prima facie* case: (1) he belongs to a protected group, (2) he was qualified for his position, and (3) his discharge was an adverse employment action. But Plaintiff cannot establish that non-African-American tankermen were treated more favorably. As discussed above, four of the eight March 2005 TCA graduates received the LG endorsement at graduation. One of the four, Archie Knighton, is African-American, one is Hispanic, and two are Caucasian. Ex. 2, ¶ 14; *see also* Archie Knighton's U.S. Merchant Mariner's Document with DL and LG endorsements, Ex. 12. Thus, Plaintiff cannot show that similarly situated employees were treated more favorably.

**2.    Plaintiff Cannot Prove Pretext.**

Because PSC has put forth a legitimate, non-discriminatory reason, under *McDonnell Douglas*, any presumption of discrimination created by Plaintiff's ability to establish a *prima facie* case disappears, and Plaintiff must produce some evidence demonstrating that PSC's reason is a pretext for racial discrimination. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309,

---

[10]    Although Plaintiff has not pleaded a Title VII claim based on his discharge, the analysis of such a claim under Title VII, and the result, would be the same as on his § 1981 discharge claim. *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000), *abrogated on other grounds by Burlington Northern and Santa Fe Ry,. Co. v. White*, 548 U.S. 53, 64 (2006).

317 (5th Cir. 2004). Plaintiff cannot produce any such evidence because he admitted both (1) that his dangerous conduct caused his discharge, Ex. 1, 146:7-8, 143:11-13, and 133:22-23,[11] and (2) that PSC had the "right to terminate [him] for overloading the barge, because that happens in this industry all the time." Ex. 1, 143:11-13. When asked in his deposition why he thought that he was fired for discriminatory reasons, McKenzie could point only to his subjective belief that his supervisor harbored racial animus toward him.[12] An employee's subjective beliefs or suspicions, standing alone, do not constitute competent evidence of discrimination. *Bauer v. Albemarle Corp.,* 169 F.3d 962, 967 (5th Cir. 1999)("This Court has consistently held that an employee's 'subjective belief of discrimination' alone is not sufficient to warrant judicial relief."), *quoting EEOC v. La. Office of Comty. Servs.,* 47 F.3d 1438, 1448 (5th Cir. 1995). Thus, Plaintiff cannot prove pretext, and Defendant is entitled to summary judgment on Plaintiff's discharge claim.

### B. Plaintiff's Title VII and § 1981 Claims - LG Endorsement.

Plaintiff did not receive the LG endorsement when he graduated from the TCA in 2005. Because any claim that he was entitled to receive all of the required LG transfers arises from the contractual relationship between PSC, as operator of the TCA, and McKenzie, as a student,

---

[11] Plaintiff testified that "it's very important that it's loaded to draft." Ex. 1, 133:22-23. "…[S]tyrene is a very heavy product. If you overload it – I can look at the overdraft now. But a few hours from now or shortly afterwards, the barge is going to continue to sink because it's listing, meaning like it's overloaded. We're talking about maybe 30,000 gallons of styrene. Styrene, like I said, is a heavy product." Ex. 1, 150:8-14.

[12] Plaintiff explained his subjective belief as follows: "I believe my relationship with Dela Cruz coming straight out of – straight out of the academy upon graduation was strange. I always felt that he had me singled out in the sense that some of the statements that he made and how he treated me I felt were discriminatory." Ex. 1, 42:8-13. "Well, I just felt like because of his unwillingness to assist me in getting my endorsement, because of how he talked at me when he did speak to me, feeling constantly intimidated about being fired with statements that he would make to me when he would come out to assist me on barges. Just the overall way he treated just me myself personally. I can't speak for anybody else. I just felt like I was being singled out." Ex. 1, 72:23-73:6. Plaintiff also admitted that he never witnessed Mr. de la Cruz talking to other African-American tankermen in the same manner. Ex. 1, 73:10-12. "I believe, because of the strange relationship that me and Dela Cruz had, just me being able to judge for myself without – and experience the things that I experienced on my own that it was race-related." Ex. 1, 110:10-14. Plaintiff was then asked if his response was "just your subjective belief?" Plaintiff responded, "Yes, it is." Ex. 1, 110:15-17.

PD.1239728.1

PSC's obligation, if any, to provide Plaintiff with the required number of LG transfers would have been owed to Plaintiff *before* his March 2005 graduation. Thus, any cause of action based on breach of that alleged obligation – including claims for race-based denial of that training – accrued in March 2005.

## 1. Plaintiff's LG Endorsement Claims are Time-Barred.

*Plaintiff's claim under Title VII is time barred*. Under Title VII, a plaintiff must file a discrimination claim with the EEOC within 300 days of the challenged discrimination. *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003). Plaintiff graduated from the TCA in March of 2005, and knew at that time that he did not receive his LG endorsement due to what he perceived as race discrimination. Ex. 1, 32:1-4. For whatever reason, Plaintiff did not file his charge with the EEOC until almost 900 days later in September of 2007. Plaintiff's LG endorsement claim under Title VII is therefore time barred and should be dismissed.

*Plaintiff's claim under § 1981 is time barred*. A brief review of the recent history of § 1981 is helpful in understanding defendant's limitations argument in this case. The statute was enacted as part of the Civil Rights Act of 1866. In 1989, the U.S. Supreme Court held in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363 (1989), *superseded by statute on other grounds as stated in CBOCS West, Inc. v. Humphries*, 128 S.Ct. 1951 (2008), that § 1981 covered "only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." *Patterson*, *supra*. Under *Patterson*, employment claims under § 1981 were limited to claims based on conduct at the time of hiring, *e.g.*, claims alleging failure to hire or discriminatory treatment in the initial terms or conditions of employment, and did not include claims based on conduct after the initial formation of the contract (the hire), such as termination or retaliation. *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 339 (5th Cir. 2003). *Patterson*'s dramatic reduction of § 1981's remedial

value prompted congressional action. In 1991, Congress legislatively repealed *Patterson* as part of the Civil Rights Act of 1991, and amended § 1981 to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b); *Foley*, 355 F.3d at 339.

Following the statute's 1991 amendment, a split of authority within the circuit courts arose over which limitations period applied, on the one hand, to claims that had been recognized under the pre-1991 version of § 1981 and, on the other hand, to those claims which were not recognized under the statute until after its 1991 amendment. In *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 382 (2004), the Supreme Court settled the issue, holding that claims that could have been brought under § 1981 prior to its 1991 amendment were not subject to the four-year "catch-all" statute of limitations in 28 U.S.C. § 1658(a).[13] Rather, the statute of limitations for those claims is determined by the state's borrowed statute of limitations. *Mitchell*, 265 Fed.Appx. at 367. (noting that because § 1981 does not contain a statute of limitations courts should use "the most appropriate or analogous state statute of limitations" to claims based on asserted violations of the statute).

Under Texas law, a plaintiff must file a discrimination claim under § 1981 within two years of the adverse employment action. *Pegram v. Honeywell, Inc.,* 361 F.3d 272, 278 (5th Cir 2004), *citing Byers v. Dallas Morning News*, 209 F.3d 419, 424 (5th Cir. 2000). McKenzie's LG endorsement claim under § 1981 is based on the TCA Enrollment Agreement he signed in November 2004. Ex. 4. The essence of Plaintiff's claim is that PSC discriminated against him on the basis of race in the formation of the Agreement, *i.e.,* in the terms that he claims were included when the contract was formed in November 2004. Indeed, Plaintiff could not claim

---

[13] 28 U.S.C. § 1658(a) "provided a 'catchall' four-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990, the date of the enactment of that law." *Mitchell v. Crescent River Port Pilots Ass'n,* 265 Fed.Appx. 363, 367 (5th Cir. 2008)(unpublished)(copy attached as Ex. 13).

otherwise, because the Fifth Circuit does not recognize the "continuing violation" theory under § 1981. *Mitchell v. Crescent River Port Pilots Ass'n,* 265 Fed.Appx. 363, 369 (5th Cir. 2008)(unpublished), 2008 WL 410414; *Pegram,* 361 F.3d at 280.[14]

Therefore, Plaintiff's § 1981 LG endorsement claim is properly characterized as a claim that was cognizable under § 1981 prior to the 1991 Amendment, and is therefore subject to Texas' two-year statute of limitations. Plaintiff graduated from the TCA in March of 2005 but failed to file his lawsuit until September 2008, more than 3 years later. PSC is entitled to summary judgment on Plaintiff's § 1981 LG endorsement claim as it was not timely filed.

### 2. Even if Plaintiff's LG Endorsement Claims are Timely, They are Insupportable as a Matter of Law.

Plaintiff alleges that PSC "refused to provide plaintiff with the training necessary to become eligible to receive the LG endorsement." Ex.3, ¶ 21; *see also* Ex. 3, ¶ 25. To survive summary judgment on this claim, Plaintiff must establish a *prima facie* case of intentional discrimination by showing that: (1) he belongs to a protected group; (2) he was qualified for his position; (3) he suffered an adverse employment action; and, in the case of disparate treatment, (4) similarly situated employees were treated more favorably. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d at 512-13. Plaintiff cannot establish the fourth element of his *prima facie* claim: that non-African-American tankermen were treated more favorably. As discussed above, four of the eight March 2005 TCA graduates received the LG endorsement at graduation. One of the four (Archie Knighton) is African-American, one is Hispanic, and two are Caucasian. Ex. 2, ¶ 14; Ex. 12. Thus, Plaintiff cannot show that similarly situated employees were treated

---

[14] For limitations purposes, the U.S. Supreme Court has held that allegations based on "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002). The Supreme Court in *Morgan* described various "discrete acts" as including "termination, failure to promote, denial of transfer, or refusal to hire," and as distinct from a hostile work environment claim which by nature involves repeated conduct. *Id.* at 114, 115.

PD.1239728.1

more favorably.

Additionally, Plaintiff cannot prove that his race was related in any way to the fact that he did not receive the required transfers for the LG endorsement. Plaintiff did not receive the endorsement because he did not complete the required transfers which would have qualified him for the LG endorsement. In turn, he did not obtain the required transfers because PSC did not have enough clients loading/discharging liquefied gas to allow it to provide each TCA student-trainee with the required number of transfers. Ex. 2, ¶ 17.

At no time did PSC consider race in assigning student trainees to any particular task, including LG transfers. Ex. 2, ¶ 17. There is absolutely no evidence that would support such a claim. Most of the factors that determined the number and identity of students who were assigned to LG transfers were not even within PSC's control. These factors included the business needs (including timing and scheduling) of PSC's customers, weather conditions, and the availability and location of individual student-trainees at any given time. Simply put, Plaintiff was not subjected to disparate treatment based on race. Even if Plaintiff establishes a *prima facie* case of discrimination, the burden of persuading the trier of fact remains at all times with him. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). The Court should grant PSC summary judgment on Plaintiff's LG endorsement claims.

### C.  Plaintiff's Hostile Environment Claims Under Title VII and § 1981.

In his Original Complaint, Plaintiff vaguely alleges that his supervisor, Mason de la Cruz subjected him to a hostile work environment. Ex. 3, ¶¶ 16, 22, and 27.[15] In his deposition, Plaintiff described the allegations that he believes constitute a hostile environment:

---

[15] Plaintiff did not raise a hostile work environment claim in his EEOC charge. That fact alone could provide sufficient justification for this Court to dismiss his Title VII hostile work environment claims in this lawsuit. *See McClain v. Lufkin Indus., Inc.,* 519 F.3d 264, 273 (5th Cir. 2008), *cert. denied* 129 S.Ct. 198 (2008).

> It was constantly feeling that my job was in jeopardy and constantly being reprimanded. And from conversations that I gathered after graduation from the TCA program. And just how I was treated individually. And how I noticed it being a little different than what others were allowed to or had assess to." Ex. 1, 116:14-20. "And I felt that I was being singled out. I just felt that I was being –I was being singled out and I was being harassed." Ex. 1, 117:11-13.

Plaintiff concedes that Mr. de la Cruz never used any racial terminology or racial slurs towards him, Ex. 1, 116:11-14, and that he never witnessed his supervisor speaking to any other African-American tankerman in the same manner Plaintiff claims his supervisor spoke to him. Ex. 1, 73:10-12.

Among other things, a plaintiff asserting a hostile work environment claim must show that the harassment complained of was based on race *and* that the harassment affected a term, condition or privilege of employment. *Celestine v. Petroleos de Venezuela SA,* 266 F.3d 343, 353 (5th Cir. 2001). Plaintiff simply cannot meet his burden as to either of these two elements of his *prima facie* case. Title VII was designed to bar conduct that is so severe or pervasive that it destroys a protected class member's opportunity to succeed in the workplace. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993); *see also Long v. Eastfield Coll.*, 88 F.3d 300, 309 (5th Cir. 1996). Offhand comments and isolated incidents do not amount to discriminatory changes in the terms and conditions of employment. Even assuming that the statements were made, they were not pervasive and, at most, they amount to a "mere offensive utterance", which, according to controlling precedent, is insufficient to create a hostile work environment. Plaintiff cannot show that any such statement, assuming it was even made, was anything more than an offhand isolated remark. Therefore, Defendant is entitled to summary judgment on Plaintiff's hostile environment claims under Title VII and under § 1981. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

### D.     Plaintiff's Breach of Contract Claim.

Plaintiff alleges that PSC breached their contract by not providing him with the LG endorsement.  Specifically, Plaintiff alleges "PSC represented to Plaintiff that upon successful completion of the Academy, Plaintiff woul[d] be eligible to receive a Merchant Mariner's Document with a Tankerman-PIC (Barge) DL (Dangerous Liquid) **and LG (Liquefied Gas) endorsement**.  Plaintiff successfully completed the academy.  PSC failed to provide or cause to be provided to Plaintiff the LG endorsement."  Ex. 3, ¶ 30 (emphasis in original).

First, any obligation  on the part of PSC  to provide Plaintiff with the required transfers to qualify him for the LG endorsement must arise from the contract between him, as a student, and PSC, as the operator of the TCA.  The terms of that contract are found in the TCA Enrollment Agreement, Ex. 4, which does not promise Plaintiff an LG endorsement, and in fact, never mentions the LG endorsement at all.  PSC never promised or guaranteed Plaintiff or any other TCA student that he would receive an LG endorsement, nor could it, as its clients' needs dictated the type of work performed.     Ex. 2, ¶  17.  To the extent that Plaintiff relies on any oral promises by persons he may have thought were authorized to bind the TCA, that reliance is misplaced.  The Enrollment Agreement provides that it

> is the entire understanding and agreement between Student and the School with respect to the subject matter hereof, and this Agreement supersedes all prior agreements, understandings, negotiations and discussions between Student and the School, whether oral or written.  This Agreement cannot be amended or supplemented, except by a written instrument signed by Student and the School.

Ex. 4, p. 2.

Alternatively, Plaintiff's recovery on his contractual claim is barred by any one of several of the plain and unambiguous terms of the Enrollment Agreement.  For example, the Enrollment Agreement provides (in a section titled "CURRICULUM") that "The School may, at any time in its discretion, vary the sequence of Program courses and/or revise the curriculum content of the

Program or any Program course." Ex. 5, p. 1.

The Enrollment Agreement also incorporates by reference the TCA Catalog (Ex. 5), and Plaintiff relies on one or more provisions in the Catalog to support his contractual claim. The portion of the Catalog that Plaintiff claims promised him an LG endorsement states: "It is the successful completion of this portion of the school that makes the student *eligible* to obtain a Merchant Mariner's Document with a Tankerman-PIC (Barge) DL and LG endorsement." *See* Ex. 1, 101:9-17 (emphasis added). This paragraph is under the heading "Field and Classroom Training" that discusses the field topics to be covered and informs the student that the course segments for the DL and LG endorsement curriculum adhere to the Coast Guard's standards. The section then ends with the quoted language.

The TCA's only promise to its students was that upon completion of the program, each graduate would be "job ready" and would receive a "Merchant Mariner's Document issued by the United States Coast Guard." *See* Ex. 5, p. 3. As previously mentioned, tankermen need only the Tankerman-PIC (Barge) DL to obtain a job in the industry, and it is uncontested that Plaintiff received his Merchant Mariner's Document and has had a successful career as a tankerman. At all times, the TCA has served only as an entry to the tankerman industry with the license required of a tankerman – the Tankerman PIC designation.

In addition, the Enrollment Agreement's incorporation provision also provides that the Enrollment Agreement trumps the Catalog in the event of any conflict between the terms of the two documents:

> CATALOG: Student agrees to all terms of the School Program catalog ("Catalog"), as revised and amended from time to time by the School. All terms of the Catalog are incorporated herein and made a part hereof as if originally and fully set forth herein, and the Catalog constitutes an addendum hereto. If any terms of the Catalog conflict with any terms of this Agreement, the terms of this

Agreement will control in determining the agreement between Student and the School.  Ex. 4, p. 1.

Plaintiff cannot show that the LG endorsement was part of the contract he entered into with PSC.  The TCA provides all of the classroom work required by 46 C.F.R., Part 13, Table 13.121(f).  Upon completion of the TCA, graduates may apply for and receive from the Coast Guard a Merchant Mariner's Document with a Tankerman-PIC (Barge) Dangerous Liquid (DL) endorsement.  This enables them to begin working as tankermen in the industry.  If they wish to obtain the additional LG endorsement, they must perform the required transfers of liquefied gasses as defined in 46 C.F.R. §13.103.

It is clear from the Catalog that the TCA only promised a student that he would receive the classroom training for the LG endorsement in accordance with the Coast Guard's regulations.  PSC did not promise Plaintiff that he would receive the requisite number of transfers during the program to obtain the LG endorsement.  Indeed, PSC could not make such a promise because it could not predict a steady enough flow of LG work to ensure each student received the required number of transfers.

Alternatively, PSC was free to alter its curriculum at any time.  The Enrollment Agreement also provides that "The School may, at any time in its discretion, vary the sequence of Program courses and/or revise the curriculum content of the Program or any Program course." Ex. 4, TCA Enrollment Agreement.  Thus, even if the Catalog could be construed as promising Plaintiff the LG transfer, PSC was free to alter its curriculum because its customers were not providing enough LG work.

Thus, under the clear terms of the Enrollment Agreement, Plaintiff cannot recover on his breach of contract claim.  Defendant is entitled to summary judgment on that claim.

## VIII.   CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendant SGS North America Inc., named defendant herein as Petroleum Services Corporation, respectfully requests that this Court grant Defendant's Motion for Summary Judgment and dismiss Plaintiff's claims against it with prejudice.

Respectfully submitted,

**PHELPS DUNBAR LLP**

By:     **/s/ Maureen Blackburn Jennings**
Maureen Blackburn Jennings
Texas Bar No.: 02385280
Federal ID No.: 09523
maureen.jennings@phelps.com
Andrew A. Woellner
Texas Bar No.: 24060850
Federal ID No.: 876537
andrew.woellner@phelps.com
700 Louisiana Street, Suite 2600
Houston, Texas 77002
Telephone: (713) 626-1386
Telecopier: (713) 626-1388

and

Thomas H. Kiggans
Texas Bar No.: 11393450
Federal ID No.: 116
tom.kiggans@phelps.com
445 North Blvd., Suite 701
Baton Rouge, Louisiana   70802
Telephone:  (225) 346-0285
Telecopier:  (225) 381-9197
**ATTORNEYS FOR DEFENDANT**
**SGS NORTH AMERICA INC.**

**OF COUNSEL:**
**PHELPS DUNBAR LLP**

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2009, I electronically filed a copy of Defendant's

Motion for Summary Judgment and Memorandum In Support with the Clerk of the Court using

the CM/ECF system, which will automatically send notice to the following:

Eric J. Davis, Esq.
Deshonda Charles Tackett, Esq.
Davis & Associates, PLLC
1314 Texas Avenue, Suite 608
Houston, TX 77002
***Attorneys for Plaintiff***

**/s/ Maureen Blackburn Jennings**
Maureen Blackburn Jennings