# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| **ARTHUR MCKENZIE** § | |
| *Plaintiff* § | |
| § | |
| **v.** § | |
| § | **Civil Action No. H-08-2286** |
| **PETROLEUM SERVICES** § | |
| **CORPORATION** § | |
| *Defendant.* § | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

        Respectfully Submitted
        **DAVIS & ASSOCIATES, PLLC**


    By: __/s/ *Deshonda Charles Tackett* _____
        Eric J. Davis
        Attorney-in-Charge
        Texas Bar No. 24003493
        Federal ID. No. 25466
        Deshonda Charles Tackett
        Texas Bar No. 24053502
        Federal ID No. 641900
        1314 Texas Avenue, Suite 608
        Houston, Texas 77002
        Telephone (713) 227-2727
        Facsimile (713) 227-2827
        ATTORNEYS FOR PLAINTIFF
        ARTHUR McKENZIE

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| **ARTHUR MCKENZIE** § | |
| *Plaintiff* § | |
| § | |
| v. § | |
| § | Civil Action No. H-08-2286 |
| **PETROLEUM SERVICES** § | |
| **CORPORATION** § | |
| *Defendant.* § | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff, ARTHUR McKENZIE asking this court to deny defendant's motion for summary judgment and would show the court as follows:

### I. Introduction

1. Plaintiff is Arthur McKenzie; defendant SGS North America, Inc. identified herein as Petroleum Services Corporation.

2. Plaintiff sued defendant for unlawful discrimination in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a); Unlawful discrimination under 42 U.S.C. § 1981; and breach of contract under Texas law. Defendant answered and denied all claims.

### II. Summary Judgment Evidence

The following evidence is presented in support of Plaintiff's memorandum in opposition to defendant's motion:

    a. Exhibit 1, *Deposition of Arthur McKenzie*

    b. Exhibit 2, *PCS's Tankerman Career Academy Catalog*

1

### III. <u>Statement of Facts</u>

During The Tankrman Career Academy PSC made affirmative representations that upon successful completion of the Academy graduates would be eligible to receive their Merchant Mariner's Document with Tankerman-PIC (Barge) DL (Dangerous Liquid) *and* LG (Liquefied Gas) endorsements. McKenzie graduated PSC's Academy in March 2005. Upon graduation McKenzie received only the DL endorsement. Following graduation, McKenzie went to work for PSC where he was assured and led to believe he would actually receive the transfers necessary to become eligible for the LG endorsement. (Ex. 1, 33: 9-20). That never happened. Rather, McKenzie was placed in a work group, Group A, under Mason de la Cruz where a disproportionate number of African American graduates were denied the training necessary to become eligible for the LG endorsement.

During his tenure with PSC McKenzie asked de la Cruz to provide him with the training required to become eligible for the LG endorsement. His requests were either denied or intentionally ignored by de la Cruz.

When PSC terminated McKenzie on February 27, 2007 it was well aware of its failure to provide the training necessary for African American tankerman to become eligible to receive the LG endorsement, including Plaintiff. In fact, upon termination McKenzie was offered $1,000.00 by Christina Maldonado on behalf of PSC in lieu of and for failure to provide the LG endorsement.

The process for applying for and acquiring endorsements was handled entirely by PSC. McKenzie never submitted any documentation to the U.S. Coast Guard to receive his Merchant Mariners Document. Currently the only endorsement held by McKenzie is the (dangerous liquids) DL endorsement secured by PSC and presented to McKenzie upon graduation. It was

not until McKenzie was terminated that it became clear that PSC would not provide the training necessary to become eligible to receive the LG endorsement.

## IV. Standard of Review

Although summary judgment is proper in any case where there is no genuine issue of material fact, this is not a case in which the court should grant summary judgment. *See* Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).

A defendant who seeks summary judgment on a plaintiff's cause of action must demonstrate the absence of a genuine issue of material fact by either (1) submitting summary judgment evidence that negates the existence of a material element of plaintiff's claim or (2) showing there is no evidence to support an essential element of plaintiff's claim. J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1996); *see* Celotex Corp., 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Defendant cannot rely on conclusory statements to establish that plaintiff has not presented evidence on an essential element of his claim. Rather, defendant must demonstrate an absence of genuine factual dispute. *See* Celotex Corp., 477 U.S. at 327, 106 S.Ct. at 2555. Only if defendant meets its burden is plaintiff required to respond by summary judgment proof to show a genuine issue of material fact. Fed. R. Civ. P. 56(e).

In determining whether there is a disputed issue of material fact that precludes summary judgment, the court must consider all evidence in the light most favorable to plaintiff as the nonmovant. Garcia v. Pueblo Country Club, 299 F.3d 1233, 1236-37 (10th Cir. 2002).

## V. Argument and Authorities

Plaintiff contends that defendant discriminated against him on the basis of his race in violation of Title VII and § 1981 when he was (a) placed in Group A under Mason de la Cruz; (b)

3

denied the training necessary to become eligible to receive and LG endorsement where similarly situated white employees received such training and endorsements; and (c) wrongfully terminated.

**A. <u>Plaintiff's Prima Facie Case of discrimination based upon race</u>**

To make out a prima facie case for employment discrimination based on race under Title VII and §1981 plaintiff must show (1) he was a member of a protected class, (2) he suffered an adverse employment action, and (3) non-protected class employees were not treated similarly. See <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). *See also* <u>Winters v. Chubb & Son, Inc</u>., 132 S.W.3d 568. (See also <u>Pegram v. Honeywell, Inc.,</u> 361 F.3d 272, 281 (5th Cir. 2004) holding that the analysis of a disparate treatment claims under both Title VII and § 1981 are the same). An adverse employment action is "a tangible employment action constitute[ing] a significant change in employment status, such as hiring [and] firing..." <u>Burlington Industries. v. Ellerth</u>, 524 U.S. 742, 761 (U.S. 1998).

Plaintiff can establish his prima facie case of discrimination. Plaintiff can satisfy the first two prongs of his prima facie claim because it is undisputed that Plaintiff is a member of a protected class and that Plaintiff suffered an adverse employment action by his termination in February 2007.

Plaintiff can satisfy the third prong of his claim upon a showing that at the time of his termination, of the members of Plaintiff's graduating class, a majority of the black tankermen were assigned to Mason de la Cruz's group –Group A, all of the non-black class members received and LG endorsement and Plaintiff did not. Further, of the non-black group members none faced denial of the opportunity to receive the training necessary become eligible to receive an LG endorsement during their tenure with defendant, yet Plaintiff was so denied.

4

Upon graduation, the newly licensed tankermen were assigned to a group whose leader was responsible for providing training and guidance to the new tankermen. Out of Plaintiff's class of eight, including five African Americans, only one African American received an LG endorsement, but all of the white group members received it. More importantly, Plaintiff did not. Plaintiff was assigned to Group A under Mason de la Cruz. Shortly thereafter, de la Cruz stated he was glad to have Plaintiff in his group so that he could fire him. (Ex 1, p. 42:23 – 43:11). Not soon after McKenzie asked to be moved out of de la Cruz's group but to no avail. (Ex. 1, 75:8-14). All the while, McKenzie continued to ask de la Cruz to give him the opportunity to get the training necessary to become eligible to receive the LG endorsement but his requests were ignored and/or denied. (Ex 1, p. 36: 1-7). At this time his white counterparts Robert Franks and Bruce Crockett had indeed received their LG endorsements. (Ex. 1, p 40:12-14 and 41:3-5) Even thought Plaintiff made it known he was available for whatever shifts necessary to receive the requisite training, he was not called upon to work the LG barges and continually denied the required training. (Ex. 1, p. 51: 12-14; p. 52: 6-9). Providing unequal access to job training and assistance is a violation of Title VII where there is proof of a discriminatory motive. *See* *Wright v. National Archives & Records Service, etc., et al.*, 609 F.2d 702, 715 (4th Cir. 1979); *International Brotherhood Of Teamsters v. United States*, 431 U.S. 324, 335 n.13, 52 L. Ed. 2d 396, 97 S. Ct. 1843 (1977).

Believing PSC would treat him fairly, Plaintiff waited to get the requisite transfers. It was not until Plaintiff was terminated that it became apparent that the reason he had not gotten the requisite transfers because of his race. The remaining African American group members had not received the necessary transfers at the time of his termination either.

Plaintiff is able to establish the third element of his claim by presenting sufficient summary judgment evidence that similarly situated non-black tankerman were treated more favorable. Plaintiff has made a showing that he asked for and was denied the training that would make him eligible to receive the LG endorsement, but his white counterparts, Robert Franks and Bruce Crockett in fact received such training and endorsements.

Plaintiff further alleges his termination was wrongful in violation of Title VII and § 1981 for being disciplined more harshly than his white counterparts under similar circumstances. In response, defendant proffers the fact that Plaintiff failed to tell his employer of a mistaken barge overload as the reason for his termination. Plaintiff explained his failure to accurately report the barge overload, however which was due to the racial tension between he and de la Cruz and the fear held by Plaintiff that his job was always in jeopardy regardless of the degree of infraction. (Ex. 1, p. 66:4-9; 69: 12-18; 72: 21- 73:6; 116:14-15; 122:6-7). Plaintiff feared any imperfection would lead to his automatic termination as opposed to any form of counseling or progressive discipline. Specifically, McKenzie testified in his deposition that he felt "any mistake was grounds for termination versus a verbal reprimand. (Ex. 1, p. 146:3-4). McKenzie was under constant fear of being terminated just for being him. (See generally, Ex. 1, p. 66:4-9; 69: 12-18; 72: 21- 73:6; 116:14-15; 122:6-7). Plaintiff could have been disciplined and still remained in his job for the act for which he was terminated. (Ex. 1, p. 141: 7-11). But the defendant used this opportunity to terminate Plaintiff. There is no evidence that Plaintiff had a history of discipline or counseling. Plaintiffs white counterparts were not disciplined as harshly as Plaintiff for rookie mistakes thereby causing Plaintiff's anxiety regarding any misstep on the job. Barge overloads like the one for which Plaintiff was terminated "happen all the time" in the tankerman industry. (Ex. 1, p. 132:10-16). Termination was not the only disciplinary option. (*Id*.)

For these reasons, Plaintiff can meet his burden of making out a prima facie case of race discrimination in violation of Title VII and §1981.

**B. Plaintiff's claims are timely**

Plaintiff's claims herein accrued upon his termination on February 27, 2007. Following termination, McKenzie timely filed a charge of discrimination with the Texas Workforce Commission, together with the EEOC on September 7, 2007. Following an investigation by the EEOC, on April 22, 2008 McKenzie received a "Notice of Right to Sue" from the EEOC. Then on July 22, 2008, Plaintiff timely filed this instant action within 90 days of receipt of that notice. Contrary to defendant's assertions, Plaintiff's claims accrued at termination.

**C. Defendants reasons for its adverse employment actions are pretextual.**

A plaintiff can survive summary judgment by showing that the legitimate non-discriminatory reasons offered by a defendant are a pretext for discrimination. *Wallace v. Methodist Hosp. System*, 271 F.3d 212, 220 (5th Cir. 2001); *Jaso v. Travis County Juvenile Bd.*, 6 S.W.3d 324, 329 (Tex. App.-Austin 1999, no pet.). A plaintiff can show pretext by revealing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted reason." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) *See also*, *Lindahl v. Air France*, 930 F.2d 1434, 1438-39 (9th Cir. 1991) (employer's changing rationale underlying the adverse employment action held sufficient evidence of pretext to survive summary judgment). Plaintiff can establish that defendant's offered reasons for its action was a pretext for unlawful discrimination by showing that other similarly situated non-black employee were afforded the opportunity to receive the training necessary to become eligible to receive the LG endorsement

7

and were not offered $1000.00 at anytime to compensate for not receiving the training and/or LG endorsement.

Defendant alleges Plaintiff was not provided the training because "PSC did not have enough clients loading/discharging liquefied gas to allow it to provide each TCA student-trainee with the required number of transfers."(Doc. 17, p. 15). However, Plaintiff requested the training well after graduation. PSC was able to afford all of the white students in McKenzie's graduation class the necessary training and transfers within a four month period, but now asks this court to accept that within two years, the period following graduation until McKenzie's termination, they had no client loading and/or discharging liquefied gas? This assertion simply has no merit. In addition, it is undisputed that upon Plaintiff's termination, Plaintiff was offered $1000.00 by Marsha Ramsey as a partial tuition reimbursement for not having received his LG endorsement. (Ex. 1, 167: 10 – 168:14). Why would McKenzie be entitled to any tuition reimbursement if PSC fulfilled its obligations to Plaintiff and did not discriminate against him by not providing the training necessary to become eligible for the LG endorsement? Plaintiff argues it wouldn't.

Defendant's proffered reason only addresses what PSC did or did not do at the time of graduation. It fails to address the next two years of Plaintiff's employment. This court should find that defendant's proffered reasons and actions in offering Plaintiff a $1000.00 parial tuition reimbursement at termination lack credence and thus are pretextual.

For these reasons, this court should deny defendants motion for summary judgment on Plaintiff's Title VII and § 1981 claims.

**D.  Plaintiff's Hostile work environment claim**

To prove his hostile work environment claim Plaintiff must show that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) based on a protected

characteristic; (4) the harassment affected a term, condition, or privilege of his employment; and (5) his employer knew or should have known of the harassment and failed to take prompt remedial action. *Equal Employment Opportunity Commission v. WC&M Enterprises, Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). For harassment to be sufficiently severe and pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive. *Id.*

To determine whether the conduct is objectively offensive the Court must consider the totality of the circumstances, including (1) the frequency of the conduct, (2) its severity, (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. *WC&M, 496 F.3d at 399*. These are considered factors only. *Id.* at 399-400. Therefore, "a single incident . . . if sufficiently severe, could give rise to a viable Title VII claim, as well as a continuous pattern of much less severe incidents of harassment." *Id.* at 400.

Plaintiff testified at his deposition that soon after being assigned to Mason de la Cruz's group, de la Cruz stated that he wanted Plaintiff in his group so he could fire him. (Ex. 1, p. 42:23 – 43:2). Plaintiff further testified that he went to Jimmy Horn and asked to be moved from de la Cruz's group because he felt de la Cruz was "out to fire him" but Horn failed to remedy the situation. (Ex. 1, p. 75:8-14 and 122:2-14). McKenzie's deposition testimony clearly indicates Plaintiff's fear of being terminated and feeling of being targeted and harassed by de la Cruz. (Ex. 1, p. 66:3 – 9; 66:4-9; 69: 12-18; 72: 21- 73:6; 116:14-15; 122:6-7). The very person he was to go to for guidance was instead unwilling to assist Plaintiff and more interested in seeking out Plaintiff's flaws due to the learning curve between de la Cruz as teacher and Plaintiff as student. (Ex. 1, 68:4-9).

9

McKenzie has sufficiently identified competent summary judgment evidence to prove he was subjected to unwelcome harassment based upon his race by identifying evidence of de la Cruz's intentions to fire him early on in his career with PSC and that de la Cruz constantly threatened Plaintiff's continued employment. McKenzie has pointed to sworn testimony of how the harassment by de la Cruz affected a term or condition of his job as Plaintiff testified that he "hated to call de la Cruz to come out [to the barge]" (Ex. 1 68:4-5) for fear that he would call for de la Cruz to come out to help but the de la Cruz was "coming to out there to write [him] up." (Ex. 1, p. 74:13-14). Finally, Plaintiff had produced evidence that PSC knew or should have know of the harassment and failed to take prompt remedial action by showing that he went to Jimmy Horn about his concerns and that Horn failed to take any remedial actions let alone prompt.

For these reasons, the defendants motion for summary judgment on McKenzie's hostile work environment claim should be denied.

### E. **Plaintiffs Breach of Contract Claim**

Plaintiff contends that defendant breached its contract to provide him the training necessary to become eligible to receive the LG endorsement when it wrongfully terminated him before providing him with the training and/or transfers necessary to become eligible for the LG endorsement.

Defendant points out that PSC did make a promise to students which can be found in the TCA Catalog. (Doc. 17, p. 18). Defendant admits that it made promises to its students which were communicated through its TCA Catalog. (*Id*.) Plaintiff alleges provisions of that same catalog promised him eligibility to receive the LG endorsement. Specifically, Plaintiff points to page 16 of the TCA Catalog wherein it states that the requirements for graduation are, among

10

other things, (1) successfully completing "600 total hours of training" and (2) satisfying "the Coast Guard's *minimum transfer* requirement(s)…" (Ex. 2, p. 16 *emphasis added*). Further, on page 12, the catalog goes on to state that successful completion of the "field and classroom training" provided by PSC "makes the student eligible to obtain a Merchant Mariner's Document with a Tankerman-PIC (Barge) DL *and* LG endorsement." (Ex. 2, p. 12).

Notably however, the contract did not provide for a specific time frame of performance for PCS to provide the required training. The assumption was that such training would occur by graduation, but there was no requirement for that time frame. Upon graduation, Plaintiff was hired by PSC to work as a tankerman, thereby extending PCS's promise to provide the training to become eligible to receive the LG endorsement and PCS's time to perform. In fact that promise was extended and ratified by PSC through Mason de la Cruz on several occasion. Each time McKenzie asked de la Cruz about receiving his LG as promised, he was told by de la Cruz "he would take care of it." (Ex. 1, p. 36: 6-7).

Throughout his tenure with defendant, Plaintiff requested the necessary training to become LG eligible. It was not until Plaintiff was terminated that the breach of contract claim accrued. Until that time, PCS had not breached rather it delayed performing its obligation under the contract with Plaintiff.

## VI. Conclusion

WHEREFORE PREMISES CONSIDERED, Plaintiff asks this court to deny defendant's *Motion for Summary Judgment*.

          Respectfully submitted,
          **DAVIS & ASSOCIATES, PLLC**


          By: __/s/ *Deshonda Charles Tackett* _____
              Eric J. Davis
              Texas Bar No. 24003493
              Federal ID. No. 25466
              Deshonda Charles Tackett
              Texas Bar No. 24053502
              Federal ID No. 641900
              1314 Texas Avenue, Suite 608
              Houston, Texas 77002
              Telephone (713) 227-2727
              Facsimile (713) 227-2827
              ATTORNEYS FOR PLAINTIFF
              ARTHUR McKENZIE


## **CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing *Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment* was filed electronically October 7, 2009. Notice of this filing will be sent to all parties and counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


              ___/s/ *Deshonda Charles Tackett*___
                  Attorney for Plaintiff